UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL KUZMA,

    Plaintiff,        19-CV-597

  v.

U.S DEPARTMENT OF JUSTICE

    Defendant.

_____

**MEMORANDUM OF LAW**

**INTRODUCTION**

This Memorandum of Law is submitted on behalf of defendant United States Department of Justice ("DOJ") in support of its motion for summary judgment, pursuant to Fed. R. Civ. P. 56. This case concerns requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Executive Office for U.S Attorneys ("EOUSA") and the U.S Attorney's Office for the District of South Dakota from Plaintiff (and attorney) Michael Kuzma for documents relating to a Ray Robinson, a civil rights activist who is believed to have been murdered during the 1973 American Indian Movement occupation at Wounded Knee on the Pine Ridge Indian Reservation in South Dakota. Dkt. # 1.

In response to Plaintiff's FOIA requests, and during the course of this litigation, EOUSA referred thousands of pages of documents that were in its possession to the Federal Bureau of Investigation ("FBI") for review and processing as those documents originated with the FBI. Declaration of Michael G. Seidel ("Seidel Dec."), ¶¶ 3-4. In response to that EOUSA referral, the FBI processed over 7,000 pages of documents and over 60 hours of audio

files.  Seidel Dec. ¶ 4.  At an October 5, 2022 conference with the Court (Dkt. # 34-35) and in follow-up emails among counsel, Plaintiff and his counsel proposed, and undersigned counsel agreed, that the FBI would provide an index under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973) ("Vaughn Index") consisting of a 500-page sample from four discrete categories of records, which are the records of most interest to Plaintiff.  Seidel Dec. ¶ 4.

## SUMMARY OF FACTS

The Court is respectfully referred to the accompanying declaration of Michael G. Seidel for a complete and full recitation of the facts relevant to this motion.

## ARGUMENT

### Standard of Review

"Summary judgment will be granted if the record demonstrates that 'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  Rosinski v. American Axle & Mfg., Inc., 663 F.Supp.2d 197, 203 (W.D.N.Y. 2009), aff'd, No. 09-4569-cv, 2010 WL 3402984 (2d Cir. Aug. 31, 2010) (quoting Fed.R.Civ.P. 56(c) and citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  "The party seeking summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion,' and identifying which materials 'it believes demonstrate the absence of a genuine issue of material fact.'"  Klumpp v. Bandit Industries, Inc., 113 F.Supp.2d 567, 570 (W.D.N.Y. 2000) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a summary judgment motion properly supported by evidence in admissible form, the non-movant must offer comparable evidence demonstrating the existence of a genuine issue of material fact."  Rosinski, 663 F.Supp.2d at 203 (citing Rule v.

2

Brine, Inc., 85 F.3d 1002, 1011 (2d Cir.1996)).  "The non-movant must present more than a "'scintilla of evidence.'"  Rosinski, 663 F.Supp.2d at 203 (quoting Del. & Hudson Ry. Co. v. Cons. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990) and Anderson, 477 U.S. at 252).  The non-movant may not rely on "some metaphysical doubt as to the material facts."  Rosinski, 663 F.Supp.2d at 203 (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.1993)).  Nor may the non-movant "rely on the allegations in his or her pleadings, conclusory statements, or 'mere assertions that affidavits supporting the motion are not credible.'"  Rosinski, 663 F.Supp.2d at 203 (quoting Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir.1996)).

Under FOIA, "every federal agency is required . . . to make its records 'promptly available to any person' upon receipt of a reasonably articulated request."  Kuzma v. U.S. Dep't of Justice, No. 12-CV-807S, 2014 WL 4829315, at *2 (W.D.N.Y. Sept. 29, 2014) (quoting Phillips v. Immigration & Customs Enforcement, 385 F. Supp. 2d 296, 301 (S.D.N.Y. 2005) and 5 U.S.C. § 552(a)(3)).  "The FOIA embodies Congress's desire that an open government allow for 'an informed citizenry to hold the governors accountable to the governed.'"  Kuzma, 2014 WL 4829315, at * 2 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999); Phillips, 385 F. Supp. at 301 ("FOIA reflects a strong Congressional policy of requiring full public disclosure of documents and records maintained by federal agencies.").  "To that end, the FOIA requires the fullest possible public disclosure of government-kept records yet at the same time maintains the confidentiality of sensitive information based on narrowly tailored exemptions intended to protect certain interests."  Kuzma, 2014 WL 4829315, at * 2.

"Federal courts are required to conduct de novo review of an agency's decision to withhold requested records under the FOIA."  Kuzma, 2014 WL 4829315, at * 2 (citing Massey v. FBI, 3 F.3d 620, 622 (2d Cir. 1993)).  "The preferred method of doing so is by summary judgment."  Kuzma, 2014 WL 4829315, at * 2 (citing Fox News Network, LLC v. U.S. Dep't of the Treasury, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); Jones-Edwards v. Appeal Bd. of NSA, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005)).

In a FOIA case, a plaintiff is entitled to summary judgment "when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption."  New York Times Co. v. U.S. Dep't of Defense, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007).  A federal agency is entitled to summary judgment "when it has thoroughly searched for responsive records and has articulated reasonably detailed explanations why any withheld documents fall within an exemption."  Kuzma, 2014 WL 4829315, at * 2 (citing Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009)).  "To carry its burden, the defending agency may rely on a *Vaughn* index, which consists of 'affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption.'"  Kuzma, 2014 WL 4829315, at * 2 (quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 481 (D.C. Cir. 1980); Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 291 (2d Cir. 1999) (citing Lesar).

The Vaughn Index has three functions: "(1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and (3) it enables the adversary system to operate by giving

4

the requester as much information as possible, on the basis of which he can present his case to the trial court." Kuzma, 2014 WL 4829315, at * 2 (quoting Halpern, 181 F.3d at 291; Keys v. United States Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987)). "Agency affidavits, including the *Vaughn* index, are presumed to have been made in good faith." Kuzma, 2014 WL 4829315, at * 2 (citing Carney, 19 F.3d at 812). "This presumption is not rebutted by bare allegations or speculative claims that additional documents exist." Kuzma, 2014 WL 4829315, at * 2 (citing Grand Cent., 166 F.3d at 489). "If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply." Garcia v. United States Dep't of Justice, Office of Info. & Privacy, 181 F.Supp.2d 356, 366 (S.D.N.Y. 2002) (citing Carney, 19 F.3d at 812); Center for Constitutional Rights v. C.I.A., 765 F.3d 161, 166 (2d Cir. 2014).

## POINT I

### THE FBI'S FOIA RESPONSE WAS PROPER AND PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

FOIA generally requires disclosure of government records unless the requested information falls within an enumerated FOIA exemption. 5 U.S.C. § 552(b). Notwithstanding the FOIA's "liberal congressional purpose," the statutory exemptions must be given "meaningful reach and application." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). "Requiring an agency to disclose exempt information is not authorized." Minier v. CIA, 88 F.3d 796, 803 (9th Cir. 1996) (quoting Spurlock v. FBI, 69 F.3d 1010, 1016 (9th Cir. 1995)). Agency decisions to withhold information under the FOIA are reviewed de novo, and the agency bears the burden of

proving its claim for exemption.  5 U.S.C. § 552(a)(4)(B); Kennedy, 2004 WL 2284691, at *

2; A. Michael's Piano. Inc. v. FTC, 18 F.3d 138, 143 (2d Cir. 1994).

### A.    Segregability

FOIA requires that government agencies disclose "[a]ny reasonably segregable portion

of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "Non-

exempt portions of a record may be withheld only if they are 'inextricably intertwined' with

the exempt portions." Kuzma, 2014 WL 4829315, at * 5 (quoting Inner City Press/Cmty. on

the Move v. Bd. of Governors of the Fed. Reserve Sys., 463 F.3d 239, 249 n. 10 (2d Cir.

2006)).  "If an agency determines that non-exempt portions of a record are not segregable, it

must justify that determination in detail." Kuzma, 2014 WL 4829315, at * 5 (citing Mead

Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977)). "In this

regard, an agency is entitled to a presumption that it complied with the FOIA's segregability

requirements." Kuzma, 2014 WL 4829315, at * 5 (citing Sussman v. U.S. Marshals Serv.,

494 F.3d 1106, 1117 (D.C. Cir. 2007)).  "A district court 'must make specific findings of

segregability regarding the documents to be withheld' before ruling that an asserted FOIA

exemption is applicable." Kuzma, 2014 WL 4829315, at * 5 (quoting Sussman at 1116).

Here, EOUSA referred a total of 7,337 pages and an estimated 60 hours of audio and

files subject to the FOIA to the FBI for review, processing, and direct response to Plaintiff.

Seidel Dec. ¶ 76.  The FBI processed these pages and approximately 60 hours of audio files

(as described above) to achieve maximum disclosure consistent with the access provisions of

the FOIA. Seidel Dec. ¶ 76.  Every effort was made to provide Plaintiff with all reasonably

segregable portions of releasable information.  Seidel Dec. ¶ 76.  With regard to the 500-page

sample, the FBI released in full 21 pages, released in part 31 pages, and withheld in full 448

pages. Seidel Dec. ¶ 76. Following its segregability review, the FBI determined that 21 pages could be released in full without redaction as there is no foreseeable harm to an interest protected by a FOIA exemption. Seidel Dec. ¶ 76. Following its segregability review, the FBI determined that 31 pages could be released in part with redactions per the FOIA exemptions identified herein. Seidel Dec. ¶ 76. These pages comprise a mixture of information that could be released and information that needs to be withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions. Seidel Dec. ¶ 76. Following its segregability review, the FBI determined that 448 pages require withholding in their entirety. Seidel Dec. ¶ 76. The FBI determined that all the information on these pages is either fully covered by one or more of the cited FOIA exemptions or any non-exempt information on these pages is so intertwined with exempt information that no information could be reasonably segregated for release. Seidel Dec. ¶ 76. Any further segregation of the intertwined information would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content. Seidel Dec. ¶ 76.

For the foregoing reasons, the Court should find that the FBI properly conducted its segregability review.

## B.    The FBI's FOIA Response Was Proper Under FOIA Exemption 3

FOIA Exemption 3, 5 U.S.C. § 552(b)(3), protects records that are

> specifically exempted from disclosure by statute . . . if that statute --
> (A)(i) requires that the matters be withheld from the public in such a
> manner as to leave no discretion on the issue; or (ii) establishes
> particular criteria for withholding or refers to particular types of matters
> to be withheld; and (B) if enacted after the date of enactment of the
> OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  In reviewing an agency's invocation of Exemption 3, "the Supreme Court [has] engaged in a two-prong review.  First, is the statute in question a statute of exemption as contemplated by exemption 3?  Second, does the withheld material satisfy the criteria of the exemption statute?"  Fitzgibbon v. CIA, 911 F.2d 755, 761-62 (D.C. Cir. 1990).  As the D.C. Circuit has explained, "'Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'"  Fitzgibbon, 911 F.2d at 761-62 (quoting Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd., 830 F.2d 331, 336 (D.C. Cir. 1987)).  "Fed R. Crim P. 6(e) represents such a statute and, thus, documents related to the grand jury process are exempt from disclosure under Exemption 3."  Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002)

In this case, the FBI has asserted Exemption (b)(3) in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure to withhold Federal Grand Jury information.  Seidel ¶¶ 39-40.  As relevant to 5 U.S.C. § 552 (b)(3)(B), Rule 6(e) is a statute enacted before the date of enactment of the Open FOIA Act of 2009.  It is well-established that Rule (6)(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which the material is contained.  Records referred to and reviewed by the FBI contain information about one or more federal grand juries empaneled in relation to the investigation at issue.  Seidel ¶¶ 39-40.  Specifically, the records contain information about the recipients of federal grand jury subpoenas.  Seidel ¶¶ 39-40.  Wherever the FBI protected this information, it found a clear nexus to a federal grand jury proceeding; thus, disclosure of this information would clearly violate Rule 6(e) by piercing the secrecy of the grand jury

proceedings and revealing the inner workings of a federal grand jury, which the FBI is precluded from disclosing.  Seidel ¶¶ 39-40.  Accordingly, the FBI has properly asserted FOIA Exemption (b)(3) to withhold this information.

**C.       The FBI's FOIA Response Was Proper Under FOIA Exemptions 6 and 7(C)**

FOIA Exemption 6, 5 U.S.C. § 552(b)(6), permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy."  The Supreme Court, in U.S. Dept. of State v. Washington Post Co., 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982), held that all information that "applies to a particular individual" satisfies the requirements for protection under Exemption 6.  Id. at 602.  Thus, information that applies to any particular, identifiable individual comes within Exemption 6.

"The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'"  Reed v. National Labor Relations Board, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  FOIA Exemption 6 requires the courts to balance the right of the public to gain access to government records against the privacy right of individuals identified in those records.  "The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information."  Dept. of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); FLRA v. United States Dep't of Veterans Affairs, 958 F.2d 503, 505 (2d Cir. 1992).

FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such [documents] ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." Where privacy interests are implicated and no public interest is served by the disclosure, Exemption 7(C) may be invoked. U.S. Dept. of Justice v. Reporters Committee For Freedom of Press, 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). "[D]isclosure of records containing personal details about private citizens can infringe significant privacy interests." Reporter's Committee, 489 U.S. at 766.

Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Seidel ¶¶ 41-42. Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and to further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purposes. Seidel ¶¶ 41-42. The FBI compiled the records at issue pursuant to its assistance to law enforcement function. Seidel ¶¶ 41-42. As prescribed by AGG-DOM, paragraph III.C., the FBI may provide investigative assistance to state, local, and tribal enforcement agencies "in the investigation of matters that may involve federal crimes or threats to the national security, or for such other purposes as may be legally authorized." Seidel ¶¶ 41-42. As relevant here,

the FBI assisted in the investigation into the murders of individuals on the South Dakota Indian Reservation.  Seidel ¶¶ 41-42.  Thus, these records were compiled for a law enforcement purpose; they squarely fall within the law enforcement duties of the FBI; therefore, the information readily meets the threshold requirement of Exemption (b)(7). Seidel ¶¶ 41-42.

When withholding information pursuant to these two exemptions, the FBI must balance the privacy interests of the individuals mentioned in the records against any public interest in disclosure.  Seidel ¶ 45.  For purposes of these exemptions, a public interest exists only when information about an individual, such as the individual's name or other identifying information, would shed light on the FBI's performance of its mission to protect the American people and uphold the Constitution of the United States, and its function to: protect the United States from terrorist attack; protect the United States against foreign intelligence, espionage, and nefarious cyber operations; combat significant criminal cyber activity, public corruption, transnational criminal enterprises, white-collar crime, and violent crime; and protect civil rights. Seidel ¶ 45.  In each instance wherein the FBI withheld information pursuant to Exemptions 6 and 7(C), the FBI determined that the individual's privacy interest outweigh any public interest in disclosure. Seidel ¶ 45.  Furthermore, considering privacy concerns are typically obviated once an individual is deceased, when processing FOIPA requests, the FBI takes several steps to ascertain the life-or-death status of each individual whose name is withheld. The FBI uses the birth date and/or the date of the investigation to determine whether an individual is deceased, to the extent that this information is discernable from the file. The date of birth is used to apply the judicially-recognized "100-year rule," i.e., if the individual was born more than 100 years ago from the date of the search, the FBI

presumes that he or she is dead and the name is released (in the absence of withholding due to another exemption). Seidel ¶ 45. The FBI also uses institutional knowledge gained from prior FOIA requests and from FBI records to ascertain whether an individual is deceased. Seidel ¶ 45. By using institutional knowledge, the FBI can identify with sufficient certainty the life-or-death status of certain individuals. Seidel ¶ 45. If the FBI is unable to determine the life-or-death status of an individual, then the name of the individual is withheld pursuant to Exemptions 6 and 7(C) if disclosure would constitute an unwarranted invasion of the individual's privacy should he or she be alive and no public interest would be served in releasing his or her name. Seidel ¶ 45. In addition, it is the FBI's policy to release names of FBI officials in policy-making positions (generally, these are officials in the Senior Executive Service (SES)), as well as the names of individuals in non-SES public-facing positions, as they do not have privacy rights while acting in their official capacity. Seidel ¶ 45. This policy is applied to the individual's position at the time of the record and not the present. Seidel ¶ 45. Accordingly, the Court should find that the FBI's designation of these exemptions was proper. Seidel ¶¶ 46-55.

### C.   FBI's FOIA Response Was Proper Under FOIA Exemption 7(D)

FOIA Exemption 7(D) exempts from disclosure:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  Where the requested records concern a criminal investigation conducted by the FBI, the second clause of Exemption 7(D) applies.  Ferguson v. F.B.I., 957 F.2d 1059, 1069 (2d Cir. 1992).  Thus all information furnished by a "confidential source" may be withheld.  Id. ("Once it is shown that information was provided by a confidential source, the information itself is protected from disclosure....").  Under Exemption 7(D), "[a] source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes."  United States Dep't of Justice v. Landano, 508 U.S. 165, 174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).  Exemption 7(D) ensures that confidential sources are protected in order to prevent harm to them and loss of a source of information.  United Techs. v. NLRB, 777 F.2d 90, 94 (2d Cir.1985).  A source is deemed confidential if he "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  Landano, 508 U.S. at 172, 113 S.Ct. 2014 (citation and internal quotation marks omitted).

Numerous confidential sources report to the FBI on a regular basis.  Seidel ¶ 57.  They provide information under an express assurance of confidentiality and are "informants" within the common meaning of the term. Seidel ¶ 57.  Others are interviewed or provide information under an implied assurance of confidentiality (i.e., under circumstances from which confidentiality may be inferred).  Seidel ¶ 57.  In either situation, these sources are considered to be confidential because they furnish information only with the understanding that their identity and the information provided (outside of its investigative use) will not be divulged outside the FBI.  Seidel ¶ 57.  Information provided by these sources is often singular in nature and, if released, could reveal their identity.  Seidel ¶ 57.  The FBI has learned through

experience that sources assisting, cooperating with, and providing information to the FBI must be free to do so without fear of reprisal. Seidel ¶ 57. The FBI has also learned that sources must be free to furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will be disclosed. Seidel ¶ 57. Sources providing information to the FBI should be secure in the knowledge that their assistance and their identity will be held in confidence. Seidel ¶ 57. The release of a source's identity would forever eliminate that source as a means of obtaining information. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. Seidel ¶ 58. Such a result undermines one of the FBI's most important means of collecting information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal law. Seidel ¶ 57.

Exemption (b)(7)(D)-1 and 2 has been asserted, in conjunction with Exemptions (b)(6) and (b)(7)(C), to protect the name, identifying data, and information provided by individuals who assisted the FBI in the criminal investigation at issue with an express or implied assurance of confidentiality. Seidel Dec., ¶¶ 59-65.

In addition, the FBI has asserted Exemption (b)(7)(D)-3 with respect to confidential source symbol numbers. The FBI withheld the permanent source symbol number given to an FBI confidential human source (CHS). Seidel ¶ 66. The FBI assigns source symbol numbers in sequential order to CHSs who report information to the FBI on a regular basis under an express assurance of confidentiality. Seidel ¶ 66. In the records at issue in this litigation, the FBI referred to the CHS by source symbol number instead of his or her true name. Seidel ¶ 66. If the FBI disclosed the confidential source symbol number of this source, his or her

14

identity could be ascertained by persons knowledgeable of the FBI's investigation and the events and subjects involved. Seidel ¶ 67. This is because these singular numbers are assigned to specific CHSs. Seidel ¶ 67. Release of the numbers, within the context of certain events or in association with certain singular information, could enable subjects of the investigation or those familiar with the investigation to determine who could possibly have been present at certain events or could possibly have known different pieces of information. Seidel ¶ 67. Once a source's identity is ascertained, the source, as well as his or her family, could be subjected to embarrassment, humiliation, or physical or mental harm. Seidel ¶ 67. Moreover, the disclosure of a CHS's identity would portray the FBI as unwilling to protect its CHSs from exposure and negligent in honoring its promise to keep CHS identities confidential. Seidel ¶ 67. This could, in turn, dissuade current and future CHSs with access to critical intelligence from cooperating with the FBI. Seidel ¶ 67. The FBI has found that it is only with the understanding of complete confidentiality that the aid of such sources can be enlisted, and only through this understanding that sources can be persuaded to continue to provide valuable assistance. Seidel ¶ 67. Accordingly, as release of symbol source numbers could endanger CHSs and their families and could harm the FBI's ability to recruit and maintain CHSs, the FBI properly withheld this information pursuant to FOIA Exemption 7(D). Seidel ¶ 67.

Similarly, the FBI, under Exemption (b)(7)(D)-4, withheld the confidential source file numbers of confidential human sources located in the records at issue. Seidel ¶ 68. Confidential source file numbers are administrative tools that the FBI uses to facilitate the retrieval and storage of information supplied by CHSs. Seidel ¶ 68. Similar to how the FBI assigns confidential source symbol numbers, confidential source file numbers are assigned in

sequential order to CHSs who provide information to the FBI on a regular basis under an express assurance of confidentiality. Seidel ¶ 68. Confidential source file numbers are unique to particular confidential sources. Seidel ¶ 68. These numbers are typically recorded on investigative documents, whenever information provided by a CHS is memorialized. Seidel ¶ 68. Therefore, investigative documents are usually annotated with the investigative file number relevant to the source's reporting and the source's assigned confidential source file number. Seidel ¶ 68. Disclosure of confidential source file numbers could result in the identification of a source because it would connect a source to the information provided. Seidel ¶ 69. Release of confidential source file numbers along with the information provided would narrow the possibilities of a source's true identity. Seidel ¶ 69. This is especially true because, as stated above, each confidential source file number is assigned to only one CHS. Seidel ¶ 69. The revelation of an individual CHS's identity would expose the CHS and his or her family to potential retaliation by those on whom he or she provided information, those sympathetic to the targets of the FBI's investigative efforts, or those suspicious of or hostile to law enforcement. Seidel ¶ 69. Such retaliation could include defamation of the source's character among his or her peers and family; economic reprisal, such as deprivation of employment or business opportunities; violent threats aimed at instilling fear and doubt; or possibly violence itself from physical harm to murder. Seidel ¶ 69. Globally, revealing a CHS's identity could dissuade current and future CHSs from cooperating with the FBI and from providing the FBI critical, timely intelligence needed to prevent or investigate violations of federal law. Seidel ¶ 69. Being able to provide a credible assurance of confidentiality and uphold such assurance enables the FBI to recruit CHSs and maintain their cooperation.

Seidel ¶ 69. Accordingly, the FBI properly withheld this information pursuant to Exemption 7(D).

The FBI further withheld information under Exemption (b)(7)(D)-5. In Exemption category (b)(7)(D)-5, the FBI protected the identity of a foreign government agency and information provided to the FBI by the foreign agency with an explicit understanding that the information would remain confidential (outside of its investigative use). Seidel ¶ 70. The FBI, in connection with a wide variety of criminal and national security investigations, solicits and receives information regularly from state, local, tribal, and foreign government agencies and authorities. Seidel ¶ 70. Inherent in the cooperative effort is the mutual understanding that, and often the agencies have signed a confidentiality agreement stating that, the identity of the source of the information and the information provided (outside of investigative use) will be held in confidence by the FBI, and not released pursuant to FOIA requests. Seidel ¶ 70. If disclosure of the information provided in confidence were to be made public pursuant to FOIA requests, cooperation between the FBI and these foreign agencies would be greatly diminished, causing great detriment to effective law enforcement. Seidel ¶ 71. The release of official United States Government documents that reveal the existence of a confidential relationship with a foreign government agency reasonably could be expected to strain relations between the United States and the foreign government and lead to negative diplomatic, political, or economic effects. Seidel ¶ 71. A breach of this relationship can be expected to have at least a chilling effect on the free flow of vital information to United States law enforcement agencies, which may substantially reduce their effectiveness. Seidel ¶ 71. Accordingly, the FBI properly withheld this information pursuant to FOIA Exemption 7(D).

### D.      FBI's FOIA Response Was Proper Under FOIA Exemption 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes," that, if disclosed, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

In Exemption category (b)(7)(E)-6, the FBI withheld the specific number of CHSs available to report on certain subject matter. Seidel ¶ 74. The FBI has a limited number of sources available to report on specified topics and in certain locations. Seidel ¶ 74. The sources must be allocated strategically and covertly to effectively gather information. Seidel ¶ 74. Revealing the specific number of CHSs available to report in the context of any one investigation or concerning one subject or location would disclose the scope of the FBI's intelligence and investigative collection capabilities and vulnerabilities with regard to specific subject matter and locations. Seidel ¶ 74. Disclosure would essentially paint a picture as to where the FBI's strengths and weaknesses lie regarding its collection abilities. Seidel ¶ 74. Armed with knowledge concerning how many sources the FBI has or does not have available to gather information would allow criminals to better gauge the likelihood of whether their criminal activities will be discovered and to determine the degree of infiltration by the FBI of their criminal organization, if any. Seidel ¶ 74. For example, if the FBI disclosed that 100 sources are available to report on a specific criminal organization, that information could allow criminals to ascertain who, within the organization, is working with the FBI. Seidel ¶ 74. Conversely, disclosing that the FBI has no sources available to report on a particular organization or in a particular area would alert criminals that the FBI has no knowledge of

18

their activities or, at least, would alert them to the fact that the FBI has not infiltrated an organization or area. Seidel ¶ 74. Accordingly, because release of this type of information would enable criminals to circumvent the law, this information has been properly withheld pursuant to Exemption 7(E).

### E.     Foreseeable Harm Standard

The FOIA Improvement Act of 2016 codified the foreseeable harm standard, ensuring that an agency shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or if disclosure is prohibited by law. Accordingly, the FBI's analysis of records is a two-part process. First, the FBI determines whether a record (or a portion of a record) is exempt from disclosure pursuant to one or more FOIA exemptions. Second, if the record (or portion thereof) is exempt from disclosure pursuant to one or more FOIA exemptions, the FBI considers whether foreseeable harm would result from disclosure of the record (or portion thereof). In each of the withheld records (or portion thereof) at issue in this litigation, the FBI conducted this two-part analysis and only withheld records (or portions of records) where it determined that the withheld record (or portion thereof) met both criteria. Seidel Dec. ¶ 75.

### CONCLUSION

Defendant's motion for summary judgment should be granted and plaintiff's complaint should be dismissed in its entirety with prejudice.

DATED:  Buffalo, New York, January 19, 2023

TRINI E. ROSS
United States Attorney


BY:   s/MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov

20