UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────

MICHAEL KUZMA,

           Plaintiff,                              19-cv-597

    v.

U. S. DEPARTMENT OF JUSTICE,

           Defendant.

─────────────────────────────────────────

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

This action was initiated on May 8, 2019, after the Federal Bureau of Investigation (FBI) denied Plaintiff access to information pertaining to Ray Robinson (Robinson) under the Freedom of Information Act (FOIA), 5 USC §552. Congress has recognized that FOIA has become an indispensable tool for ensuring our Government remains transparent and accountable to the people.[1] The sought-after information had been referred to the FBI for processing by the Executive Office for United States Attorneys (EOUSA) and United States Attorney for South Dakota in response to Plaintiff's FOIA requests dated November 1, 2017 and November 19, 2018. Plaintiff exhausted the applicable administrative remedies with respect to his FOIA requests before commencing suit.

The Plaintiff in this case, Michael Kuzma, is an attorney, with an office in Buffalo, New York. He has spent over two decades using FOIA to secure records from the United States

─────────────────────

[1] S. Rep. No. 114-4 (2016) as reprinted in 2016 U.S.C.C.A.N. 321, 322

Department of Justice and its components such as the FBI and EOUSA relating to Leonard Peltier, and the American Indian Movement (AIM). See Kuzma Declaration ¶3.

Robinson was a civil rights worker and follower of Dr. Martin Luther King, Jr. In 1964, for example, Robinson participated in the Quebec-Washington-Guantanamo Walk for Peace. During the walk, Robinson was incarcerated in the Albany, Georgia City Jail, where he participated in a hunger strike. See Barbara Deming, Prison Notes 114, 115 (Grossman Publishers 1966).

In addition, Robinson was involved with the Poor's People's Campaign, which was conceived in 1967 by Dr. King and the Southern Christian Leadership Conference. Robinson and his wife, Cheryl, travelled to Washington in the Spring of 1968 and were part of "Resurrection City." Robinson and Cheryl served on the Committee of 100[2], which was composed of representatives of all the groups (Appalachian whites and Blacks, Chicanos, Indians, southern Blacks, et al.) that participated in the Poor People's Campaign. They attended meetings with representatives from Health, Education and Welfare (HEW) and other government agencies where they presented their demands. During the Poor People's Campaign, Robinson and Cheryl met Ms. Nadine Eckhardt, wife of Congressman Robert C. Eckhardt, Democrat, Texas, 8th Congressional District.  See Nadine Eckhardt, Duchess of Palms 80 (University of Texas Press 2009).

In April of 1973, Robinson travelled to South Dakota to join members and supporters of AIM, who were participating in the occupation of Wounded Knee, a Pine Ridge Reservation village. See Bissonette v. Haig, 776 F. 2d 1384, 1385 (8th Cir. 1985) for details concerning the Wounded Knee occupation. Robinson never returned home to his family, his body has not been

---

[2]  Gerald D. McKnight, The Last Crusade, Martin Luther King, Jr., the FBI, and the Poor People's Campaign 108 (Westview Press 1998)

found, he has been declared legally dead and the full story about what actually happened to him is not known.

## ARGUMENT

## POINT I

## NON-EXEMPT PORTIONS OF DOCUMENTS MUST BE RELEASED

Non-exempt portions of a document may only be withheld if they are "inextricably intertwined" with the exempt portions. See Inner City Press v. Board, Fed. Res. System, 463 F. 3d 239, 249 n. 10 (2nd Cir. 2006). A District Court must make specific findings of segregability regarding documents to be withheld before ruling that an asserted FOIA exemption is applicable. See Sussman v. U. S. Marshals Service, 494 F. 3d 1106, 1116 (2nd Cir. 2007).

EOUSA referred 7,337 pages and an estimated 122 hours of audio and video files to the FBI for review in response to Plaintiff's FOIA requests. See Michael G. Seidel Declaration dated January 18, 2023 (Seidel Declaration) ¶76. As for the 500-page sampling used in preparation of the Vaughn Index, 21 pages were released in full, 31 pages were released in part, and 448 pages withheld in their entirety. See Seidel Declaration ¶76. In other words, nearly 90 percent of the 500 sample pages reviewed by the FBI were withheld in full. The FBI appears to have lost sight of the fact that disclosure, not secrecy, is the dominant objective of FOIA. See Dept. of the Interior v. Klamath, 532 U. S. 1, 8 (2001).

FOIA unquestionably states that segregable portions of records "shall" be provided. See 5 USC §552(b). Nevertheless, Plaintiff received a little over 10 percent of the 500 sample pages processed by the FBI in full or in part. The FBI claims that, ". . . any non-exempt information on these pages was so intertwined with exempt information that no information could be reasonably segregated for release. Any further segregation of the intertwined information would employ finite

resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content." See Seidel Declaration ¶76c.

*In camera* inspection has been used to verify that an agency has released all reasonably segregable information. See <u>Allard K. Lowenstein International Human Rights Project v. U. S. Dept. of Homeland Security</u>, 603 F. Supp. 2d 354, 360-61 (D. Conn. 2009), *decision aff'd* 626 F. 3d 678 (2nd Cir. 2010). Further, in <u>Bartko v. United States DOJ</u>, 167 F. Supp. 3rd 55, 73 (D.D.C. 2016) the court conducted an *in camera* review of 238 withheld pages in an abundance of caution to ensure that the agency had fulfilled its obligation to release reasonably segregable non-exempt materials. The court carried out this examination even though the United States Postal Inspection Service had furnished the court with declarations from agency officials and a detailed <u>Vaughn</u> Index.

Plaintiff is assisting the Robinson family locate their missing husband and father. No matter how inconsequential the FBI may deem it to be, all information falling within the scope of Plaintiff's FOIA request ought to be released. Given the large percentage of records withheld in full, this Court should exercise its authority under 5 USC §552 (a) (4) (B) to inspect the 500-page random sampling of records *in camera* so that a responsible determination of the Government's compliance with FOIA could be made. An *in camera* of the random sampling of records would not be unduly burdensome for the Court.

**POINT II**

<u>**THE REDACTIONS UNDER EXMPTION (b)(3) FOR GRAND JURY INFORMATION APPEAR TO HAVE BEEN IMPROPERLY MADE**</u>

Plaintiff does not dispute that Fed. R. Crim. P. 6 (e) is a qualifying statute under Exemption 3. Plaintiff further recognizes that the Second Circuit has found that Fed. R. Crim. P. 6 (e) qualifies as an Exemption 3 statute and as such grand jury subpoenas, information identifying grand jury

witnesses, information identifying records subpoenaed by the grand jury, and the dates of grand jury testimony are protected from disclosure. See Peltier v. FBI, 218 Fed. Appx. 30, 32 (2nd Circuit 2007). A review of Vaughn Index reveals that the FBI invoked Exemption (b)(3) in conjunction with (b)(6) and (b)(7) to withhold Bates page numbers 749, 891, 1274, 2935, 2936, 4984, 5046, and 6440 in full or in part. The description of these pages, however, seems to indicate that the information contained therein is not the type that may be withheld under the (b)(3) Exemption. For example, Bates page number 749 is described as being a "Transcript of a conversation between a confidential source and a third party dated February 19, 2001 discussing the murder of Anna Mae Aquash," Bates page numbers 2935 and 2936 are described as being "FD-302 dated June 20, 2001 containing an audio transcript of a telephonic conversation between a confidential source and a third party providing information on the murder of Anna Mae Aquash," and Bates page 5046 is described as FD-302 dated March 30, 1976 documenting interview summary of confidential source providing information on a murder that took place in 1976." This information should be made available to the Plaintiff or, in the alternative, this Court ought to conduct an *in camera* review to determine its releasability.

## POINT III

### THE PUBLIC INTEREST IN THE SOUGHT-AFTER RECORDS OUTWEIGHS ANY PRIVACY CONCERNS UNDER EXEMPTIONS (b) (6) AND (b) (7) (C)

The FBI has cited Exemptions (b) (6) and (b) (7) (C) to protect names and/or identifying information of FBI Special Agents and Professional Staff, third parties, non-FBI federal government personnel and local law enforcement personnel. In order to determine applicability of Exemption 7 (C) to FBI Special Agents and Professional Staff and third parties, and others, courts must balance any privacy interests involved against the public interest that is served by disclosure. The citizen must show that the public interest sought to be advanced is a significant one, an interest

more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. See Associated Press v. U. S. Dept. of Defense, 554 F. 3d 274, 285 (2nd Cir. 2009).

There clearly is substantial public interest in the case of Ray Robinson. The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, recognized the public interest and historical aspect of the Ray Robinson matter. See Kuzma Declaration ¶19. Moreover, many media outlets have carried stories about the disappearance and murder of Ray Robinson. See Kuzma Declaration ¶18. Robinson's disappearance and murder are addressed in Chapter 16 of the book entitled, Unquiet Grave, The FBI and the Struggle for the Soul of Indian Country by Steve Hendricks, which was published in 2006 by Random House. Though the investigation has been closed, questions remain as to who murdered Ray Robinson, why, where was he buried, and whether there was any government complicity in the murder.

Additionally, several individuals involved and/or who may have possessed information concerning the murder of Ray Robinson are deceased. See Kuzma Declaration ¶17. The FBI has institutional knowledge of these deaths by way of FOIA requests submitted by Plaintiff prior to the commencement of this instant action. See Kuzma Declaration ¶17. It is within the discretion of the District Court to require an agency to demonstrate that the individuals upon whose behalf it claims the privacy exemption are, in fact, alive. See Frankenberry v. FBI, 567 Fed. Appx. 120 (3rd Cir. 2013). If the number of individuals is not excessive, the agency could be required to determine whether the individuals are alive before asserting a privacy interest on their behalf. See Davin v. Department of Justice, 60 F. 3d 1043, 1059 (3rd Cir. 1995).

The FBI ought not be allowed to redact the identities of deceased individuals referenced in the Ray Robinson files under Exemptions (b) (6) and (b) (7) (C). Further, the privacy interests of

FBI Special Agents and Professional Staff, third parties, non-FBI federal government personnel and local law enforcement personnel do not outweigh the significant public interest in how the FBI bungled the investigation into the disappearance and murder of Ray Robinson. The FBI claim of exemption under (b) (6) and (b) (7) (C) should therefore be rejected.

**POINT IV**

**DEFENDANT HAS NOT SUSTAINED ITS BURDEN OF PROOF WITH RESPECT TO ITS CLAIM OF EXEMPTION UNDER (b) (7) (D)**

At the outset it should be noted that Plaintiff is not interested in receiving Confidential Source Symbol Numbers, Confidential Source File Numbers, or the identity of the foreign government agency that provided information to the FBI with an explicit understanding that the information would remain confidential. Plaintiff is, however, interested in receiving information concerning a Confidential Human Source (CHS) and Cooperating Witness (CW) who has been publicly identified.

Darlene Kamook Nichols Ecoffey, formerly known as Kamook Banks. Nichols Ecoffey is the former wife of Dennis Banks. Banks, it should be noted, was a member and served as a leader of AIM. See United States v. Means, 513 F. 2d 1329, 1330 (8th Cir. 1975). Nichols Ecoffey was known as "Maverick." See United States v. Marshall, 2009 U. S. Dist. LEXIS 38045 (S. D. April 29, 2009) and United States v. Graham, 03-50020-002, (S. D., Docket No. 263, September 4, 2008).

It is Plaintiff's contention that Nichols Ecoffey's activities as a CHS and CW have been publicly confirmed via trial testimony and reported court decisions. See State v. Graham, 2012 SD 42 (2012), U. S. v. Looking Cloud, 419 F. 3d 781 (8th Cir. 2005), and Kuzma Declaration ¶21 and ¶22. Further, many of the individuals Nichols Ecoffey clandestinely recorded, such as Dennis Banks and Leonard Crow Dog, are now deceased. The information these individuals imparted to

Nichols Ecoffey should be made public. Defendant's claim of exemption under (b) (7) (D) for records generated as a result of the activities of Nichols Ecoffey is not proper and must be denied.

<b>POINT V</b>

<b><u>THE FBI'S EXPLANATIONS FOR WIHHOLDING INFORMATION UNDER EXEMPTION (b) (7) (E) ARE NOT LOGICAL OR PLAUSIBLE</u></b>

The FBI asserted Exemption (b) (7) (E) to withhold the specific number of CHSs available to report on certain subject matter. Exemption (b)(7)(E) excludes documents from FOIA's disclosure requirement if an agency satisfies two conditions. First, the agency must show that the records were "compiled for law enforcement purposes." Second, the agency must show that the records either (1) "would disclose techniques and procedures for law enforcement investigations or prosecutions;" or (2) "would disclose guidelines for law enforcement investigations or prosecutions" and "such disclosure could reasonably be expected to risk circumvention of the law." See <u>Knight First Amendment Institute v. U.S. Citizenship and Immigration Services</u>, 30 F. 4th 318, 327 (2nd Cir. 2022). The FBI contends, among other things, that release of this information "would disclose the scope of the FBI's intelligence and investigative collection capabilities and vulnerabilities with regard to specific subject matter and locations" and "enable criminals to circumvent the law." See Seidel Declaration ¶74.

Plaintiff does not dispute that records in question were compiled for law enforcement purposes. He does, however, question whether the number of CHSs operating at Wounded Knee decades ago fall within the scope of Exemption (b)(7)(E). This number cannot plausibly be deemed to be "techniques," "procedures," or "guidelines."

In addition, it is difficult to fathom how the release of the number of CHSs operating at Wounded Knee five decades ago would bring about the harms set forth in the Seidel Declaration. Prominent AIM leaders from the 1970's like Dennis Banks, Vernon Bellecourt, Leonard Crow

Dog, and Russell Means, are deceased. Three websites for AIM: www.aimovement.org, coloradoaim.org, and aimgrandgoverningcouncil.org, have not been active for years. The last press release posted on aimovement.org was dated July 17, 2018. The last blog on coloradoaim.org was dated November 29, 2005. As for aimgrandgoverningcouncil.org, under the "AIM History" tab, the last AIM related events listed occurred in 2006. With the death of most of the AIM leadership and inactivity of competing AIM organizations, the concerns expressed in the Seidel Declaration ¶74 have little, if any, possibility of coming to fruition. As previously noted, the investigation into the murder of Ray Robinson was closed nearly a decade ago. Considering the foregoing facts, Defendant's claim of exemption under (b)(7)(E) should be rejected.

**POINT VI**

**<u>THE FBI FAILED TO PROVIDE SUFFICIENT INFORMATION
REGARDING COURT ORDERS</u>**

The FBI withheld records marked "OTHER-Sealed Court Order per EOUSA." See Seidel Declaration ¶33. The Seidel Declaration does not indicate what steps, if any, the FBI took to ascertain if the Order(s) in question has (have) been unsealed. The Court and Plaintiff are left to speculate when and where the Order(s) was (were) issued and if, it (they) is (are) in fact, still sealed. Granting summary judgment is not appropriate at this juncture given the scant number of details proffered by Defendant to justify the continued withholding of this information.

## POINT VII

## THERE IS NO BASIS UNDER THE LAW FOR WITHHOLDING THE NAME OF THE AGENCY THAT REQUESTED NON-ATTRIBUTION

The FBI states that it is waiting on consultation to be returned from an agency that requested non-attribution. See Seidel Declaration ¶34. There is no authority under the law for the FBI to withhold the name of this agency. Also, there is no indication how many pages may have been referred to this agency, when they were generated, or when processing of these documents will be completed. This Court should Order Defendant to release the name of the agency in question, the number of documents turned over to the undisclosed agency, and the date on which processing will be completed.

## POINT VIII

## FOIA IMPROVEMENT ACT OF 2016 MANDATES DISCLOSURE OF THE REQUESTED RECORDS

Congress enacted the FOIA Improvement Act of 2016 in response to the "growing and troubling trend" to withhold large swaths of Government information even though no harm would result from disclosure." See S. Rep. No. 114-4 (2016) as reprinted in 2016 U.S.C.C.A.N. 321, 322 and Center for Public Integrity v. U. S. Department of Defense, 486 F. Supp. 3d 317 (D.D.C. 2020). An agency must release a record--even if it falls within a FOIA exemption--if releasing the record would not reasonably harm an exemption protected interest and if its disclosure is not prohibited by law. See Judicial Watch v. U.S. Dept. of Justice, 2019 WL 4644029 (D.D.C. 2019) and Rosenberg v. U. S. Dept. of Defense, 342 F. Supp. 3d 62, (D.D.C. 2018).

After half a century, it is time to lift the veil of secrecy that the Government has held over this disappearance and murder of Ray Robinson. Plaintiff submits that the records sought in this case are precisely the type Congress had in mind when it enacted the FOIA Improvement Act of

2016. There is great historical and public interest in this matter as Mr. Robinson was a civil rights leader and follower of Dr. Martin Luther King. Mr. Robinson was involved with, among other activities, the Poor People's Campaign, which was conceived in 1967 by Dr. King and the Southern Christian Leadership Conference. 50 years of secrecy is enough! The Government should no longer be allowed to conceal all the facts and circumstances surrounding Ray Robinson's disappearance and murder. The time for transparency is now and the FOIA Improvement Act of 2016 provides the vehicle by which it may be achieved.

**POINT IX**

**<u>PLAINTIFF IS ELIGIBLE FOR AN AWARD OF</u>**
**<u>ATTORNEY FEES AND LITIGATION COSTS</u>**

Under 5 USC §552 (a) (4) (E) (i) a complainant may be awarded reasonable attorney fees and other litigation costs reasonably incurred in any case in which he has substantially prevailed. A complainant has "substantially prevailed" if a voluntary or unilateral change in position by the agency that is not insubstantial has occurred.  See 5 USC ¶552 (a) (4) (E) (ii) (II) and <u>Warren v. Colvin</u>, 744 F. 3d 841 (2nd Cir. 2014).

The FBI released records responsive to Plaintiff's FOIA request only after he commenced this lawsuit. An award of reasonable attorney fees and litigation costs reasonably incurred is clearly warranted in this case as the release of the requested will help increase the public's understanding of the facts and circumstances surrounding the disappearance and murder of Ray Robinson. Plaintiff has not and will not derive any commercial benefit from the released records. He will continue to make the released information readily available to the public through his connections with the media and public presentations.

## CONCLUSION

For all the foregoing reasons, the Defendant's motion for summary judgment should be denied and the relief sought by Plaintiff in his complaint should be granted.

Dated:  February 23, 2023

Respectfully submitted,


*s/daire brian irwin*
Daire Brian Irwin, Esq.
210 Voorhees Avenue
Buffalo, NY 14214
(716) 984-7082
daireirwin17@gmail.com